**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| SCOTT J. BLOCH, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:15-cv-1146** |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | |
| PRESIDENT, *et al.*, | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Scott J. Bloch is the former United States Special Counsel, the head of the United States Office of Special Counsel ("OSC"), an independent agency of the federal government responsible for protecting federal employees from prohibited personnel policies such as reprisal for whistleblowing.[1] In his fifteen-count Amended Complaint, plaintiff alleges that he was removed from office as Special Counsel in violation of constitutional and statutory law as the result of a wide-ranging conspiracy by various federal agencies and officials. The Amended Complaint further alleges (i) that this conspiracy was unlawful under RICO[2] and 42 U.S.C. § 1985(1)[3] and (ii) that the conspiracy ultimately led plaintiff to suffer violations of his rights

---

[1] *See* 5 U.S.C. § 1211 *et seq.*

[2] Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

[3] This provision makes it unlawful, *inter alia*, for "two or more persons in any State or Territory [to] conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof;…or to injure him in his person or property on account of his lawful discharge of the duties of his office,…or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties[.]"

under the Privacy Act,[4] the Constitution, and various common law tort duties. The named

defendants are (i) James Byrne, in his individual and official capacity, a former Deputy Special

Counsel at the OSC, (ii) Patrick McFarland, in his individual and official capacity, the U.S.

Inspector General, (iii) Jill Maroney, in her individual and official capacity, a Special Agent in

charge of an investigation into alleged wrongdoing by plaintiff during the course of his service as

Special Counsel, (iv) the Executive Office of the President ("EOP"), (v) the Office of Personnel

Management ("OPM"), and (vi) the OSC.

The fifteen-count Amended Complaint asserts the following claims:

(1) Count I: Deprivation of property without due process of law in violation of the
Fifth Amendment against the EOP, the OPM, and the OSC;

(2) Count II: Violation of 5 U.S.C. § 1211, which confers a five-year term in
office with removal only for cause on the Special Counsel, against all defendants;

(3) Count III: Violation of the separation of powers by the EOP;

(4) Count IV: Violation of the Privacy Act against all defendants;

(5) Count V: Violation of RICO against all defendants;

(6) Count VI: Conspiracy to interfere with the duties of plaintiff's federal office in
violation of 42 U.S.C. § 1985 against all defendants;

(7) Count VII: Violation of the First, Fourth, and Fifth Amendments against all
defendants;

(8) Count VIII: Civil conspiracy to interfere with contract and property rights,
prospective business relations, and to invade privacy against all defendants;

(9) Count IX: Defamation *per se* against all defendants;

(10) Count X: Whistleblower retaliation against defendants EOP and Byrne;

(11) Count XI: Breach of fiduciary duty against the OSC and Byrne;

---

[4] 5 U.S.C. § 552a.

(12) Count XII: Intentional and negligent misrepresentation against all defendants;

(13) Count XIII: Civil conspiracy and breach of fiduciary duty against defendants Byrne, McFarland, the EOP, the OPM, and the OSC;

(14) Count XIV: Civil conspiracy and intentional and negligent infliction of mental and emotional distress against Byrne, McFarland, and Maroney; and

(15) Count XV: Injunctive relief against all defendants.

Plaintiff seeks damages, a declaration that defendants acted unlawfully, and an injunction preventing defendants from further unlawful activity including prohibiting any further investigations or press releases concerning plaintiff, his actions while in office, or his removal.

Defendants have moved to dismiss the Amended Complaint for lack of jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. Plaintiff, in turn, filed a memorandum in opposition to defendants' motion to dismiss as well as a motion to transfer venue to the United States District Court for the District of Columbia, where a related lawsuit has been pending since 2009, and a motion for leave to amend his complaint in order to add three new counts. The motions were fully briefed and argued orally. By Order dated January 19, 2016, plaintiff's motion to transfer venue was denied.[5] This Memorandum Opinion addresses defendants' motion to dismiss and plaintiff's motion to amend.

## I.

The facts pertinent to this action may be succinctly stated.[6] On December 9, 2003, Congress confirmed President Bush's nomination of plaintiff as Special Counsel, the head of the

---

[5] *See Bloch v. Exec. Office of the President*, No. 15-cv-1146 (E.D. Va. Jan. 19, 2016) (Order) (Doc. 38).

[6] The facts recited here are derived chiefly from the Amended Complaint, the factual allegations of which are assumed to be true for purposes of a motion to dismiss. *See Columbia Venture, LLC*

OSC, for a statutory five-year term in office. Plaintiff assumed office on January 5, 2004. Shortly after assuming office, plaintiff enacted a series of controversial reforms. For one, plaintiff reversed his predecessor's conclusion that 5 U.S.C. § 2302 provides broad protection for federal employees against discrimination on the basis of sexual orientation. For another, plaintiff reorganized the OSC, including by transferring twelve employees from headquarters to various field offices. These changes prompted the filing of formal complaints against plaintiff, accusing him of committing prohibited personnel practices and other wrongs. Ordinarily, such complaints would fall within the OSC's jurisdiction, so plaintiff recused himself from investigating the matter. Ultimately, the OSC authorized the OPM, through Inspector General Patrick McFarland's office, to conduct an investigation into the complaints on the OSC's behalf. Accordingly, at the direction of Inspector General McFarland, in March 2006 defendant Special Agent Maroney conducted an investigation into the allegations against plaintiff.

Over the course of the OPM investigation, the OPM discovered that plaintiff had hired a private computer firm to perform a "seven-level wipe" of his OSC computer and the OSC computers of two other OSC political appointees.[7] This wipe made it virtually impossible for anyone to recover deleted data from the computers. Plaintiff alleges that the OPM's records of

---

*v. Dewberry & Davis, LLC*, 604 F.3d 824, 827 (4th Cir. 2010). Some additional facts noted herein are not in the Amended Complaint, but have been appropriately judicially noticed pursuant to Rule 201, Fed. R. Evid. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that it is appropriate on a motion to dismiss to consider "matters of which a court may take judicial notice").

[7] This information is not from the Amended Complaint but is a matter of public record from plaintiff's plea agreement pleading guilty to willful depredation of government property in the United States District Court for the District of Columbia. *See* D. Mem. Supp., Ex. 2. Such public record material may be judicially noticed. *See* Rule 201 (establishing that a court "must take judicial notice" of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" where "a party requests it and the court is supplied with the necessary information").

this investigation were leaked to the media, which in turn prompted an investigation by the United States House of Representatives Committee on Oversight and Government Reform. The OPM investigation also led to a criminal investigation, which included the execution of a search warrant at plaintiff's home and OSC office in May 2008.

In July 2008, defendant Byrne, who had been serving as Deputy Special Counsel, resigned from his position via a letter in which he severely criticized plaintiff's conduct in office. Plaintiff alleges that in addition to being part of the conspiracy to oust plaintiff from the OSC, Byrne also conspired to obtain an appointment as Special Counsel after resigning. Thereafter, in August 2008, the White House Counsel ("WHC") sent plaintiff a letter informing plaintiff that WHC was prepared to recommend that President Bush remove plaintiff from office for "inefficiency" and "neglect of duty," as permitted under federal law. *See* 5 U.S.C. § 1211(b). Plaintiff was given five business days to respond to his proposed removal, and he submitted a written response, through private counsel, on August 8, 2008. A few months later, in October 2008, WHC informed plaintiff that he could accept administrative leave for the remainder of his term as Special Counsel or be removed from office. Plaintiff, under threat of removal, accepted administrative leave.

In February 2013, plaintiff pled guilty to willful depredation of government property in the United States District Court for the District of Columbia for his involvement in the wiping of the OSC computers. Later that same year, in December, the OPM issued a final report on its investigation into plaintiff, concluding, *inter alia*, that there was evidence that plaintiff committed prohibited personnel practices when he involuntarily transferred several OSC employees to field offices.

Plaintiff has filed several lawsuits stemming from the events surrounding his removal as Special Counsel, including two voluntarily non-suited Virginia state court actions that preceded this action, the first filed in 2011 and the second in 2012. The earlier-filed Virginia state court actions both alleged facts and counts materially identical to the instant case, which was filed in Virginia state court in August 2014 and removed to federal court in September 2015. Moreover, a separate lawsuit against the OPM alleging a violation of the Privacy Act stemming from facts common to this action has been pending in the United States District Court for the District of Columbia since 2009. Thus, as a practical matter the Amended Complaint here is the fifth complaint plaintiff has filed relating to the events in issue.

## II.

In Count I, the Amended Complaint alleges that the EOP, the OPM, and the OSC deprived plaintiff of property without due process of law in violation of the Fifth Amendment by removing him from office as Special Counsel without constitutionally adequate process. Specifically, plaintiff argues that he (i) did not have adequate notice, (ii) did not have an adequate opportunity to be heard, (iii) did not have an impartial decision-maker, and (iv) was removed for conduct falling short of "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1211(b). Because plaintiff's claim in Count I is not justiciable and, in any event, fails as a matter of law, defendants' motion to dismiss Count I for lack of jurisdiction and, in the alternative, for failure to state a claim must be granted.

## A.

The first flaw with Count I is that there is no basis on which a federal court has the power to resolve this dispute; the claim is not justiciable. This is so because of two distinct but closely related doctrines, standing and mootness. It is axiomatic that under Article III of the

Constitution, federal courts have jurisdiction to decide only "cases" and "controversies." *See* U.S. Const., art. III, § 2. Thus, in order for a federal court to exercise judicial power there must be "an actual controversy...at all stages of review." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotations omitted). At the commencement of litigation, a plaintiff must show (i) an injury in fact (ii) that is fairly traceable to the defendant's conduct, and (iii) that can be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Arizonans for Official English*, 520 U.S. at 68 n.22 (noting that standing is relevant at the commencement of litigation). Even if standing exists at the outset, if at any point in the existence of the case "it is impossible for a court to grant any effectual relief whatever to the prevailing party," then the case has become moot and there is no controversy fit for judicial resolution. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012); *Arizonans for Official English*, 520 U.S. at 68 n.22 (noting that mootness is relevant post-commencement).

At the outset, plaintiff never had standing to sue *these defendants* with respect to his removal from office. Indeed, the constitutionally protected property interest of which plaintiff alleges he was deprived without due process of law was his employment as Special Counsel for a full term, and the deprivation was his removal from that office. Yet, it is pellucid that if plaintiff was in fact removed as he alleges,[8] then the removal is traceable to only one person, namely President Bush, who was the only person with the power to remove plaintiff under 5 U.S.C. §

---

[8] Defendants argue that plaintiff was not removed and that he has failed to allege removal because plaintiff admits that he accepted administrative leave through the end of his term. Yet, the Amended Complaint and the parties' briefing reflect that there is a dispute between plaintiff and defendants as to how plaintiff's term in office should have been measured, with plaintiff alleging that his administrative leave ended before his term in office actually expired. Because there are other grounds on which to dispose of defendants' motion to dismiss, whether plaintiff was removed or adequately alleges removal is neither reached nor decided. This Memorandum Opinion assumes throughout that removal actually occurred.

1211(b). To be sure, the agency defendants named in Count I may have undertaken actions to bring about plaintiff's removal or to effectuate the president's directive that plaintiff's removal occur, but these agencies did not themselves remove plaintiff. Because the removal from office, which only President Bush had the power to cause, is the deprivation alleged, the constitutional injury asserted is not traceable to the agency defendants named here. Accordingly, plaintiff lacks standing to sue these defendants with respect to Count I.

Plaintiff faces a related problem as to the redressability of his claim. Although plaintiff does not specify what relief he seeks to redress this particular alleged constitutional injury, it is clear that no relief is available. For one, there is no basis by which a court can impose monetary liability on the agency defendants based on a freestanding constitutional claim arising out of an improper deprivation of property without due process of law. *See FDIC v. Meyer*, 510 U.S. 471, 473 (1994) (holding that there is no implied cause of action for damages against federal agencies for violations of constitutional rights). Nor is there any appropriate injunctive relief; a property interest in an ephemeral term in office that has long since expired cannot be vindicated by directing the agency defendants to do anything.[9] Plaintiff cannot be returned to his former position (or to any equivalent position), as that would require a presidential appointment and Senate confirmation. *See* 5 U.S.C. § 1211(b). And ordering more post-deprivation process likewise serves no purpose, as the process is no longer tied to a property interest that plaintiff holds given that his term has expired. Other forms of injunctive relief that plaintiff seeks under related counts, namely ordering the agencies to cease further proceedings against plaintiff and to return plaintiff's papers to his possession, are similarly unavailing, as these remedies are entirely

---

[9] This Memorandum Opinion assumes throughout that plaintiff had a property interest in his tenure as Special Counsel, although the issue is neither reached nor decided.

unrelated to the injury asserted here, namely plaintiff's *removal* without due process. And

finally, there is no available declaratory relief because the only possibly proper defendant,

President Bush, is not a party to this litigation, and a declaration that he acted unlawfully with

respect to plaintiff's removal from office is therefore insufficient for purposes of Article III. *Cf.*

*Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 695 (9th Cir. 2010) ("It is not permissible under

Article III for [courts] to give an essay-like lecture to the [president] in a decision that will not

bind [him] because [he] is not a party to this litigation."). Accordingly, although perhaps there

was a remedy at some point in the past, Count I cannot be redressed now and is moot.

### B.

Quite apart from the justiciability defects, it is not difficult to conclude that plaintiff's due

process argument fails as a matter of law.[10] The amount of process due in any given situation is a

"flexible" standard that is sensitive to what "the particular situation demands." *Mathews v.*

*Eldridge*, 424 U.S. 319, 334 (1976). Specifically, *Mathews* instructs that the amount of process

due depends on a balancing of three factors: (i) the private interest at stake, (ii) the risk of error

under the procedures used and the probable value, if any, of additional or substitute procedures,

and (iii) the government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirements would entail. *See*

*id.* at 335. In light of the particular facts as alleged or otherwise established on the record,

plaintiff's arguments that he (i) did not have adequate notice, (ii) did not have an adequate

opportunity to be heard, (iii) did not have an impartial decision-maker, and (iv) was removed for

---

[10] In his opposition to defendants' motion to dismiss, plaintiff alludes to a deprivation of a
constitutionally protected liberty interest as part of his claim in Count I. This is flatly inconsistent
with what the Amended Complaint actually alleges. Nevertheless, because the analysis *infra*
demonstrates that plaintiff received constitutionally adequate process, any claim for deprivation
of a liberty interest likewise fails.

conduct falling short of "inefficiency, neglect of duty, or malfeasance in office" under 5 U.S.C. §
1211(b) all fail.

Plaintiff had adequate notice of the allegations against him and of the possibility of
removal, and plaintiff had an adequate opportunity to respond. On August 1, 2008, plaintiff
received written notice from WHC that based on a series of specific allegations against plaintiff
and complaints from members of Congress, WHC was prepared to recommend that the president
remove plaintiff as Special Counsel. Am. Comp. ¶ 69, Ex. A. Among the reasons relied upon to
justify plaintiff's removal, WHC cited the then-ongoing criminal investigation into plaintiff's
conduct while in office, which ultimately resulted in a criminal conviction. *See id.*; D. Mem.
Supp., Exs. 2 (plaintiff's plea agreement), 13 (plaintiff's judgment of conviction). After this
notice, plaintiff was afforded five business days to respond to his proposed removal, and plaintiff
submitted a written response, through private counsel, on August 8, 2008. Am. Comp. ¶¶ 74, 75,
Ex. B.

In these specific circumstances, in which a high-level political appointee running an
independent federal agency and subject to removal only for cause is under criminal investigation
for alleged misconduct in office, clear written notice and one business week to respond is
constitutionally adequate process. Although the private interest at stake, plaintiff's employment,
is important, the government's interest in the efficient and scrupulous administration of the core
tasks of an agency such as the OSC is certainly no less important. Moreover, the process that
plaintiff seeks to require—a final factual finding of cause for removal by an impartial decision-
maker—would impose significant administrative burdens on the government. That is, to require
the president to sit idly by for formal fact-finding after having identified evidence of cause to
remove a high-level government official would only exacerbate agency inefficiency and

10

consume investigatory resources while affording the official under review more time to commit

malfeasance in office. Where, as here, the president relies on substantial evidence of

inefficiency, neglect, and malfeasance as a basis for removing the Special Counsel, the cost of

additional formal procedures designed to establish that the wrongdoing actually occurred are

intolerably high, and the Constitution accordingly does not require such procedures.[11]

Thus, even assuming that plaintiff had standing to bring this claim and that the claim is

not now moot for want of redressability, plaintiff's procedural due process claim fails as a matter

of law. As such, Count I must be dismissed with prejudice.

### III.

Count II of the Amended Complaint alleges against all defendants a violation of 5 U.S.C.

§ 1211(b), which confers upon the Special Counsel a five-year term in office with removal only

for cause.[12] In essence, plaintiff argues that his premature removal from office was a violation of

his statutory right to a set term. As with Count I, Count II is not justiciable; plaintiff's actual

removal is not traceable to the named defendants, nor is there any appropriate remedy that a

---

[11] It is worth noting again that the record plainly discloses that plaintiff did, in fact, commit "malfeasance in office," a ground for removal under 5 U.S.C. § 1211(b). In the ordinary sense of the term, "malfeasance" is any wrongdoing or misconduct. *See, e.g.,* Am. Heritage Coll. Dictionary 820 (3d ed. 1993). Through his plea of guilty in the United States District Court for the District of Columbia to willful depredation of government property while in office, plaintiff has admitted to malfeasance. *See* D. Mem. Supp., Ex. 2.

[12] Plaintiff argues that he was actually entitled to a six-year term in office because § 1211(b) provides that "the Special Counsel may continue to serve beyond the expiration of the term until a successor is appointed and has qualified, except that the Special Counsel may not continue to serve for more than one year after the date on which the term of the Special Counsel would otherwise expire under this subsection." This language does not create a vested six-year term; rather, § 1211(b) provides that a Special Counsel *may* serve up to one year beyond the five-year term until a successor is appointed. Any suggestion that plaintiff was entitled to serve beyond his five-year term is wholly speculative, as it is impossible to know whether a successor would have assumed office immediately at the end of plaintiff's term.

court can provide. Moreover, plaintiff does not have a cause of action for a violation of

§ 1211(b). Nothing in § 1211(b) expressly provides for a remedy or creates a private cause of

action, which is telling given that when Congress intends to create a cause of action for

independent officials who are removed, it does so explicitly. *See, e.g.,* 28 U.S.C. § 596(a)(3)

(creating a cause of action to review the removal of an independent counsel). Where, as here,

Congress fails to manifest an intent to create a private remedy, an implied cause of action should

not be inferred. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (holding that "[t]he judicial

task is to interpret the statute Congress has passed to determine whether it displays an intent to

create not just a private right but also a private remedy" and declining to imply a private right of

action to enforce disparate-impact regulations promulgated under Title VI of the Civil Rights Act

of 1964).

The conclusion that plaintiff does not have a private remedy under § 1211(b) finds further

support in the existence of the Civil Service Reform Act of 1978 ("CSRA"), which is Congress's

"integrated scheme of administrative and judicial review, designed to balance the legitimate

interests of the various categories of federal employees with the needs of sound and efficient

administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). In light of the

comprehensive nature of the CSRA, it is now well settled in the Fourth Circuit that the CSRA

"operate[s] to the exclusion of all other statutory remedies for claims arising out of the federal

employment relationship." *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000).[13] To be sure, the

CSRA's protections "do[] not apply to an employee whose appointment is made by the

---

[13] It is worth noting that the CSRA does not preempt various federal anti-discrimination statutes
because the CSRA, by its plain terms, preserves the protection afforded by those statutes for
federal civil servants. *See* 5 U.S.C. § 2302(d) (expressly preserving various anti-discrimination
laws, such as Title VII, in the federal employment context).

President." 5 U.S.C. § 7511(b)(3). Yet, this does not mean that Congress intended that presidential appointees should have a panoply of remedies unavailable to other federal employees. To the contrary, the "deliberate exclusion of employees in [a] service category" indicates a congressional intention that employees within that service category simply should not have administrative or judicial remedies. *See Fausto*, 484 U.S. at 455 (so holding as to non-preference members of the excepted service).[14] Because the CSRA is the comprehensive statutory scheme governing federal personnel actions, and because Congress intentionally excluded presidential appointees like plaintiff from the CSRA's remedial coverage, it follows that Congress determined that plaintiff should not have a statutory remedy under § 1211(b).[15] Simply put, an aggrieved federal employee's statutory remedies for claims arising from the federal employment relationship are limited; only the remedies available under the CSRA may be pursued. Where, as here, plaintiff's federal service category has no remedies under the CSRA, the absence of such remedies is properly understood as a conscious choice by Congress to afford *no* statutory remedies. This congressional intent further reinforces the conclusion reached here that Congress, in enacting § 1211(b), did not intend to create a private cause of action.

---

[14] *Accord Zimbleman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000) ("The fact that [plaintiffs] were...exempted by Congress from the Civil Service Reform Act does not release them from its exclusive remedial framework."); *McAuliffe v. Rice*, 966 F.2d 979, 981 (5th Cir. 1992) (holding "that the CSRA furnishes the exclusive set of remedies available to federal employees of all types" regardless whether the employees are excluded from the CSRA's remedial framework).

[15] This is not to say that a president's violation of § 1211(b) by improperly removing a Special Counsel from office would necessarily go without redress. If, as plaintiff alleges here, a president violates Congress's mandate that a Special Counsel be removed only for cause, there is no reason Congress cannot seek to hold the president accountable through the political process. Although no such political process redress appears to have occurred here, it bears reiteration that on this record plaintiff in fact committed malfeasance in office and was therefore eligible for removal under § 1211(b). *See supra* n.11. Given this, and given that prominent members of Congress were calling for plaintiff's removal as Special Counsel, it is unsurprising that Congress elected not to pursue any political action against the president on these facts.

For the foregoing reasons, plaintiff lacked standing to bring this claim, the claim is now moot for want of redressability, and plaintiff fails to state a claim because § 1211(b) does not create a cause of action. Accordingly, Count II must be dismissed with prejudice.

## IV.

In Count III, the Amended Complaint alleges that the EOP violated the constitutional separation of powers by removing plaintiff from office contrary to the congressional imposition of a for cause limitation in § 1211(b). As with Counts I and II, plaintiff's argument is not justiciable because any legal violation stemming from plaintiff's removal is traceable only to President Bush. And moreover, for the reasons expressed with respect to Count I in Part II-A, *supra*, there is no remedy that a court can afford for any violation.

Similarly, because plaintiff's removal is traceable only to President Bush, plaintiff fails to state a claim against the EOP. That is, the EOP may have influenced the decision to remove plaintiff as Special Counsel, and the EOP may have taken action to effectuate the president's decision, but the decision to remove plaintiff was President Bush's alone. And even then, President Bush's removal of plaintiff cannot be understood as a violation of the separation of powers.[16] Indeed, plaintiff's legal theory that his removal for less than adequate cause violates

---

[16] Neither reached nor decided here is the question whether the Special Counsel is an exclusively executive principal officer with significant administrative authority such that the president must have the unfettered power to remove the Special Counsel at will. *See Morrison v. Olson*, 487 U.S. 654, 691 (1988) (suggesting that the Constitution might require that a principal officer exercising executive functions with "significant administrative authority" must be removable at will by the president). If the Special Counsel were such a position, then § 1211(b) would necessarily be unconstitutional to the extent that it limits the president's power of removal. Because of the constitutional ramifications of such a holding and the existence of alternative grounds on which to rule, the analysis here proceeds on the opposite assumption, namely that the Special Counsel is a truly independent position for which Congress can impose a for cause requirement for removal. In this regard, as previously noted, the record reflects that plaintiff was in fact eligible for removal from office for malfeasance. *See supra* n.11.

14

the constitutional separation of powers improperly conflates a violation of the law with an infringement of legislative power. Specifically, the removal of a Special Counsel in violation of § 1211(b) would be contrary to statute but not an attempt by the president to legislate unilaterally. In this situation, the relevant "power" separated from the Executive is the power to legislate, so only an unauthorized attempt to use that power would offend the Constitution. *See* U.S. Const., art. I, § 1 ("All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."). Because a failure to comply with a law is not the same as an attempt to enact new law, plaintiff's allegedly improper removal from office does not implicate a constitutional separation of powers problem, and plaintiff therefore fails to state a claim.

Accordingly, Count III must be dismissed with prejudice for lack of jurisdiction and failure to state a claim.

**V.**

Count IV of the Amended Complaint alleges against all defendants a violation of the Privacy Act resulting from the alleged leaking of certain records and other information about plaintiff to the media and to members of Congress.[17] As a preliminary matter, the remedial

---

[17] Defendants argue that there is no subject matter jurisdiction to consider plaintiff's Privacy Act claim under the doctrine of derivative jurisdiction. Under this doctrine, if a state court lacks subject matter jurisdiction to adjudicate a claim and the case is removed to federal court, the federal court similarly lacks jurisdiction because in a removed action the federal court derives its jurisdiction from the state court. *See Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012) (holding that a federal district court lacked subject matter jurisdiction over a Title VII claim removed from state court under 28 U.S.C. § 1442(a)). Importantly, Congress has abrogated the doctrine of derivative jurisdiction for cases removed under 28 U.S.C. § 1441. *See* 28 U.S.C. § 1441(f) ("The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."). Because defendants removed

15

provisions of the Privacy Act apply only to federal agencies, not to individuals. *See* 5 U.S.C. §

552a(g)(1); *Williams v. Dep't of Vet. Affairs*, 879 F. Supp. 578, 581 n.5 (E.D. Va. 1995).

Accordingly, the individual defendants, in their individual and official capacities, must be

dismissed with prejudice, as plaintiff has no cause of action against them.

As to agency defendants EOP and OSC, the Amended Complaint is devoid of factual

allegations establishing a plausible inference of Privacy Act liability and therefore fails to state a

claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to…allow[] the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."). To state a

Privacy Act claim, four elements must be alleged: (i) that a "record" contained within a "system

of records" was disclosed, (ii) that a defendant agency disclosed the record, (iii) that the

disclosure adversely affected the plaintiff, and (iv) that the disclosure was willful or intentional.

*See Richards v. CIA*, 837 F. Supp. 2d 574, 579 n.4 (E.D. Va. 2011) (citing *Quinn v. Stone*, 978

F.2d 126, 131 (3d Cir. 1992)) . The Amended Complaint's only allegation against the EOP and

the OSC is the conclusory statement that they leaked information from a "privacy act protected

and confidential meeting." Am. Comp. ¶ 2 (p. 37).[18] A "confidential meeting" is not a "system of

records," and the conclusory legal assertion that the meeting is protected under the Privacy Act is

entitled to no weight. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions."). Here, the only

---

Count IV, in part, based on § 1441(a), § 1441(f) confers subject matter jurisdiction. *See* Notice of
Removal, ¶ 3 (removing Count IV under § 1441(a)).

[18] The Amended Complaint is replete with errors in paragraph numbering. Where helpful to
avoid confusion, paragraph citations are accompanied by relevant page numbers.

agency alleged to maintain a qualifying "system of records" is the OPM. *See* Am. Comp. ¶ 52.

Accordingly, plaintiff has not stated a claim against either the EOP or the OSC.

Although plaintiff states a claim against agency defendant OPM, plaintiff has

impermissibly split his claim. In November 2009, plaintiff filed a Privacy Act lawsuit against the

OPM in the United States District Court for the District of Columbia alleging Privacy Act

violations stemming from the OPM's investigation into plaintiff's misconduct as Special

Counsel.[19] Moreover, plaintiff alleged that the violation at issue in the District of Columbia

lawsuit was part of a conspiracy with the OSC and the EOP. *Id.* ¶ 10. On March 5, 2014,

following discovery, plaintiff moved to amend his Complaint in the District of Columbia to add

the OSC as a defendant; that motion remains pending.

Plaintiff's actions in his District of Columbia lawsuit are relevant because plaintiff's

attempt to sue the OPM here violates the well-settled principle of federal litigation embodied in

the rule against claim splitting. In general, this rule bars a second lawsuit (i) that "arises out of

the same transaction or series of transactions" as a previous lawsuit and (ii) that "involves the

same parties." *Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*, 273 F. App'x 256, 265 (4th

Cir. 2008). Ordinarily, the rule operates to prevent the filing of a new lawsuit after the court

hearing the first lawsuit has denied leave to amend to add the claims later asserted in the second

lawsuit. *See id.* Although no such ruling has yet issued in the parallel District of Columbia

litigation, the same principle applies here, namely that plaintiff cannot seek to contravene a

court's power to manage its docket by filing duplicative litigation elsewhere. As relevant here,

---

[19] *See Bloch v. U.S. Office of Pers. Mgmt.*, No. 09-cv-2133 (D.D.C.). A review of the Amended
Complaint here and the Complaint in the District of Columbia court discloses that the lawsuits
relate to the same subject matter. *Compare* Am. Comp. ¶¶ 52-56 *with* Defs. Mem. Supp., Ex. 3
¶¶ 7-13 (stating nearly identical allegations).

the rule against claim splitting operates like claim preclusion in that a second claim should be dismissed if it would be precluded were the first asserted claim reduced to a final judgment. *See Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). Here, plaintiff's earlier-filed Privacy Act lawsuit in the District of Columbia arises out of the same series of transactions and is asserted against the same defendants (OPM and, depending on the outcome of the pending motion to amend, OSC). Thus, a ruling on the merits of the Privacy Act claim the District of Columbia would preclude further litigation of the claim in this district. For that reason, and because the assertion of Count IV here is essentially an attempt to contravene the District of Columbia court's power over plaintiff's motion to amend, the claims against the OPM and the OSC are properly dismissed without prejudice such that these claims can be presented in the District of Columbia to the court considering the first of the claims filed.

In light of the foregoing discussion of claim splitting, it is pellucid that plaintiff should not be given leave to amend his complaint in this action in order to state a Privacy Act claim against the OPM and the OSC as those claims should be presented to the District of Columbia court. But it is also worth noting that plaintiff, in the particular circumstances of this litigation, is also not entitled to leave to amend for the purpose of stating a Privacy Act claim against the EOP. Although leave to amend should be freely given when justice requires, a number of factors can justify withholding such leave, including, *inter alia*, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (internal quotations omitted). Here, plaintiff has not forecasted any facts that might support a Privacy Act claim against the EOP. This is so even though plaintiff had access to discovery

18

related to these same alleged disclosures as part of his lawsuit in the District of Columbia, in which plaintiff alleged that the EOP was part of a Privacy Act conspiracy with the OPM and the OSC. If there were facts to support a Privacy Act claim against the EOP, plaintiff should presumably already be aware of them and his Amended Complaint should reflect these facts. Moreover, the fact that plaintiff has filed numerous complaints over many years in various state and federal courts against the same defendants alleging legal violations all stemming from his removal as Special Counsel suggests that plaintiff is unduly delaying resolution of his claims, is acting in bad faith, or at the very least should have already reached the point at which his complaint clearly and coherently explains the bases for liability. Accordingly, it is appropriate here to deny leave to amend the complaint for the purpose of allowing plaintiff to state a claim against the EOP under the Privacy Act. But because this dismissal is without prejudice, plaintiff is not precluded from seeking leave to amend his complaint in the District of Columbia for the purpose of adding the EOP as a defendant if such a proposed amendment would comply with the strict requirements of Rule 11, Fed. R. Civ. P.

## VI.

In Count V, the Amended Complaint alleges against all defendants a violation of RICO, in essence arguing that defendants conspired together and formed an enterprise that engaged in illegal conduct targeting plaintiff. At the outset, to the extent plaintiff seeks to sue agencies or individual defendants in their official capacities, the suit is barred by sovereign immunity and there is no subject matter jurisdiction over the claim.[20] As the Ninth Circuit has explained, suits

---

[20] Sovereign immunity is a complicated doctrine that "has led to a great deal of mischief in the law governing actions against the United States." 14 Wright & Miller, Federal Practice and Procedure § 3654 at 122 (2015). Specifically, there are some instances in which a court might have jurisdiction but the federal government might not have waived its immunity, in which

19

against the United States and federal employees in their official capacities require a waiver of

sovereign immunity, but "RICO...does not mention, much less waive, sovereign immunity." *See*

*Chow v. Giordano*, 24 F.3d 245, 1994 WL 192112, at *1-2 (9th Cir. 1994). Accordingly, the

RICO claim against the agency defendants and the individual defendants in their official

capacities must be dismissed for lack of subject matter jurisdiction.

Moreover, even if subject matter jurisdiction existed as to the agency defendants,

plaintiff's RICO claim would fail against these defendants because a federal agency cannot

violate RICO. As defined in RICO, prohibited "racketeering activity" extends only to acts that

are "chargeable," "punishable," or "indictable." 18 U.S.C. § 1961(1). Because a federal agency

cannot be charged, punished, or indicted under state or federal criminal laws, it follows that a

federal agency's actions are not chargeable, punishable, or indictable. As such, a federal agency

cannot commit "racketeering activity" as defined in RICO, and plaintiff cannot state a claim

against the agency defendants. *Accord McNeily v. United States*, 6 F.3d 343, 350 (5th Cir. 1993)

(affirming dismissal of RICO claim against the FDIC); *Berger v. Pierce*, 933 F.2d 393, 397 (6th

Cir. 1991) ("[I]t is self-evident that a federal agency is not subject to state or federal criminal

prosecution."). Thus, the RICO claim against the agency defendants must also be dismissed for

failure to state a claim.

With regard to the individual defendants sued in their individual capacities, the Amended

Complaint similarly fails to state a claim. A civil RICO claim has four essential elements: (i)

---

instance sovereign immunity is not jurisdictional but a "defense to an action against the United
States." *See Powelson v. United States*, 150 F.3d 1103, 1104 (9th Cir. 1998). Nevertheless, the
law has generally developed as viewing a waiver of sovereign immunity as a "prerequisite for
jurisdiction," and the absence of a waiver of sovereign immunity "has been treated by courts as a
fundamental defect that deprives the district court of subject matter jurisdiction." Wright &
Miller, *supra*, § 3654 at 122-23.

conduct; (ii) of an enterprise; (iii) through a pattern; (iv) of racketeering activity. *See Whitney,*

*Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). Under the most

liberal construction of the Amended Complaint, the only qualifying "racketeering activity"

alleged is, in essence, an allegation of mail and wire fraud. *See* Am. Comp. ¶¶ 112e, 114. Yet,

the only allegedly fraudulent behavior—which must be pled with particularity under Rule 9(b),

Fed. R. Civ. P.—is the allegation that defendants sought to "mislead the public and harm

Plaintiff and the U.S. Government, the Aviation Industry, and United States Citizens who fly in

public aviation and who have an interest in their government being run without private political

motives and misuse of power and appropriated taxpayer money." Am. Comp. ¶ 113. Read in the

context of the entire Amended Complaint, plaintiff's allegation is that the individual defendants

lied about his activity in office, which led to plaintiff's removal. Because plaintiff alleges that he

was performing laudably as Special Counsel, including through his investigation into

whistleblower complaints by employees of the Federal Aviation Administration, *id.* ¶ 45,

plaintiff alleges that his removal on the basis of misrepresentations was broadly harmful to the

whole of the United States and particularly to persons who benefit from the Federal Aviation

Administration's activities.

Simply put, the allegations in the Amended Complaint are wholly insufficient to state a

claim for mail or wire fraud. *See Vuyyuru v. Jadhav*, No. 10-cv-173, 2011 WL 1483725, at *19

(E.D. Va. April 19, 2011) ("In order for an illegal act to constitute a racketeering act for RICO

purposes, the plaintiff must plead all the elements of the underlying offense and plead facts

demonstrating that the defendant could be convicted of that offense."). The Amended Complaint

does not allege with any particularity (i) what allegedly fraudulent statements were made, (ii)

who made the allegedly fraudulent statements, (iii) when the allegedly fraudulent statements

were made, or (iv) how the mails or wires were used to effectuate a scheme to defraud. Thus, there is no plausible inference of RICO liability by way of fraud or conspiracy to commit fraud; plaintiff has nothing more than the allegation that the individual defendants lied about him. Moreover, because plaintiff has failed to allege a qualifying "racketeering activity," he necessarily fails to allege a *pattern* of racketeering activity, which is also essential to state a claim.

As with plaintiff's Privacy Act claim alleged in Count IV, there are compelling reasons in the circumstances of this case to deny leave to amend to state a civil RICO claim. To begin with, a civil RICO claim like the one plaintiff seeks to assert here, namely alleging unlawful activity in connection with plaintiff's removal from federal employment, is precluded under the CSRA. It appears that plaintiff's theory of the case is that a fraud was committed by defendants' using misrepresentations to induce plaintiff's removal from office. In this sense, the injury arose exclusively from plaintiff's federal employment in that the three individual defendants, who were all federal employees operating in their employee capacity during the relevant times, allegedly caused injury to plaintiff as a result of an investigation into plaintiff's performance of his federal employee duties. Thus, for all intents and purposes plaintiff is attempting to use RICO as a statutory remedy for an injury that arises from a federal personnel action. But as discussed with respect to Count II, *supra*, the Fourth Circuit held in *Hall*, 235 F.3d at 206, that the CSRA precludes all other statutory remedies for claims arising out of federal employment. Although *Hall* did not address a claim under RICO, the Fourth Circuit's analysis in that case is dispositive here. Specifically, the Fourth Circuit observed that "[a]llowing a federal employee to sue those people who may have influenced a supervisor's decision to take a certain personnel action would create an obstacle to the attainment of Congress's goal of unifying challenges to federal

personnel decisions in a single administrative forum." *Id.* (internal quotations omitted). Thus, any civil RICO claim alleging a fraud by fellow federal employees, acting as such, that induced plaintiff's superior to remove plaintiff from office would be preempted by the CSRA under the logic of *Hall*. *Cf. Abou-Hussein v. Mabus*, No. 14-cv-2597, 2015 WL 5178460, at *2 (D.S.C. Sept. 3, 2015) (holding that the CSRA preempts a civil RICO claim by a member of the civil service against unknown federal agents who allegedly conspired to frame the plaintiff by making false reports to the General Counsel for the Navy). And quite apart from preclusion, plaintiff also forecasts no facts to suggest that he can even adequately allege a civil RICO violation.

Thus, plaintiff's civil RICO claim must be dismissed with prejudice.[21]

## VII.

Count VI of the Amended Complaint alleges against all defendants a conspiracy to interfere with plaintiff's duties of office in violation of 42 U.S.C. § 1985(1), which proscribes "conspir[ing] to prevent, by force, intimidation, or threat, any person" from discharging the duties of an office under the United States "or to injure [such an officer] in his person or property on account of his lawful discharge of the duties of his office."

The Fourth Circuit has squarely held that claims under § 1985 that arise from federal employment are precluded by the CSRA. *See Hall*, 235 F.3d at 205-06. The allegations in the

---

[21] In addition to futility, other reasons justify dismissing the Count without leave to amend. For one, the events alleged in the Amended Complaint took place approximately eight years ago. In the intervening years, plaintiff has filed several complaints in multiple state and federal courts alleging wrongdoing by the defendants here and stemming from a common series of events. There can be little doubt that defendants have been prejudiced by plaintiff's undue delay in asserting his claims and prosecuting them diligently, as the defendants' memories have surely faded with the passage of time. This prejudice, coupled with plaintiff's highly suspect litigation strategy of filing numerous lawsuits over many years and delaying prosecution thereof, counsels against allowing plaintiff yet another opportunity to state his claims. *See Glaser*, 464 F.3d at 480 (undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility of amendment justify denying leave to amend).

Amended Complaint leave no doubt that plaintiff seeks to sue defendants for actions undertaken

in an official capacity as part of a federal personnel action. That is, the Amended Complaint

alleges that the investigation of plaintiff's wrongdoing as Special Counsel was a conspiracy to

interfere with the exercise of plaintiff's federal office. Yet, this investigation and plaintiff's

subsequent removal from office are clearly personnel decisions that are properly governed by the

CSRA. *Id.* at 206 (noting that the CSRA is the exclusive statutory remedy for federal personnel

decisions).[22] As explained with respect to Count II, *supra*, the fact that plaintiff, as a presidential

appointee, lacks remedies under the CSRA does not mean that plaintiff can bring other statutory

claims, such as under § 1985. Rather, Congress's choice to exclude presidential appointees from

the CSRA's remedial scheme reflects a legislative judgment that such employees should not

have the benefit of comprehensive remedies on par with the typical civil servant. *Cf. Fausto*, 484

U.S. at 455 (holding that the "deliberate exclusion of employees in [a] service category"

indicates a congressional intention that employees within that service category should not have

statutory remedies). Because the CSRA preempts plaintiff's § 1985 claim, Count VI must be

dismissed with prejudice for lack of subject matter jurisdiction.[23] *See Hall*, 235 F.3d at 206-07

(noting that CSRA preclusion is a bar to subject matter jurisdiction).

---

[22] *Accord Spagnola v. Mathis*, 809 F.2d 16, 30 (D.C. Cir. 1986) (holding that the CSRA
precludes a § 1985(1) claim arising from the federal employment relationship).

[23] It is worth noting that as against the agency defendants and the individual defendants sued in
an official capacity, sovereign immunity also operates as a bar to subject matter jurisdiction. *See*
*supra* n.20 (discussing sovereign immunity generally); *Chow*, 1994 WL 192112, at *1-2 (9th Cir.
1994) (noting that suits against the United States and federal employees in their official
capacities require a waiver of sovereign immunity).

## VIII.

In Count VII, the Amended Complaint asserts a *Bivens* action against all defendants for violations of the First, Fourth, and Fifth Amendments.[24]

As a preliminary matter, the Amended Complaint fails to state a claim against the agency defendants OPM, EOP, and OSC because a *Bivens* action will not lie against a federal agency. *See Meyer*, 510 U.S. at 473 (declining "to imply a [*Bivens*] cause of action directly against an agency of the Federal Government" because "the logic of *Bivens* itself does not support such an extension"). The same is true with respect to the individual defendants sued in their official capacities, as "[a]ny remedy under *Bivens* is against federal officials individually, not the federal government." *See Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996). Accordingly, the agency defendants and the individual defendants sued in their official capacities must be dismissed with prejudice, and any *Bivens* action may proceed, if at all, against only the individual defendants sued in their individual capacities.

The basis for plaintiff's First Amendment *Bivens* claim appears to be (i) that plaintiff was retaliated against for his religious views and speech, Am. Comp. ¶ 134, and (ii) that defendants destroyed plaintiff's religious articles, *id.* ¶ 139. Importantly, the alleged retaliation appears to be the investigation into plaintiff's misconduct as Special Counsel and his subsequent removal. *See id.* ¶ 136. This is significant because federal employment is a "special factor" that forecloses implying a *Bivens* remedy. *See Zimbleman*, 228 F.3d at 370-71. Indeed, the Fourth Circuit has held that even where a federal employee is excluded from the statutory remedies of the CSRA, as plaintiff is here, courts should still not imply a *Bivens* remedy for injuries arising from federal

---

[24] *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (implying a cause of action for damages against federal government officials who violate constitutional rights).

employment. *See id.* at 371.[25] Because the investigation of plaintiff and his subsequent removal as Special Counsel were personnel actions related to plaintiff's federal employment, a First Amendment *Bivens* remedy is inappropriate here and cannot be implied as to plaintiff's claim of retaliation. As to plaintiff's second theory—that the destruction of plaintiff's religious articles constitutes a First Amendment violation—plaintiff's claim is properly conceptualized as a deprivation of property without due process of law. Plaintiff cites no authority, nor has any been found, to suggest that the religious nature of property transforms a claim for its destruction by government officials into a First Amendment violation. Accordingly, even assuming a *Bivens* remedy were appropriate, plaintiff fails to state a *Bivens* claim for a violation of the First Amendment.

Plaintiff's *Bivens* claim alleging a violation of the Fourth Amendment appears to stem from the search of plaintiff's home and office as part of the criminal investigation into his actions as Special Counsel.[26] Am. Comp. ¶¶ 134, 139. The Amended Complaint fails to state a claim in this respect for at least three reasons. First, plaintiff acknowledges that the searches of his home and office and the seizure of his property were conducted pursuant to a warrant, *id.* ¶ 60, and plaintiff does not allege that the warrant was invalid. Accordingly, the search and seizure were presumptively reasonable and not in violation of the Fourth Amendment. *See, e.g., Riley v.*

---

[25] *Accord Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998) ("We hold that the CSRA precludes a *Bivens* remedy in this case notwithstanding the fact that the CSRA does not provide administrative or judicial review of the adverse personnel action.").

[26] Defendants liberally read the Amended Complaint as also stating a Fourth Amendment claim stemming from the alleged leak of private information about plaintiff to the press. To the extent plaintiff intends to pursue such a claim, the existence of the Privacy Act as a comprehensive remedial scheme makes implying a *Bivens* action inappropriate. *See Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008) ("Therefore, because Congress created a comprehensive Privacy Act scheme…we will not supplement the scheme with *Bivens* remedies.").

*California*, 134 S. Ct. 2473, 2482 (2014) (noting that a valid warrant renders a search and seizure reasonable). Second, even assuming the searches and seizures violated the Fourth Amendment, a *Bivens* action would be untimely because the searches and seizures took place in 2008 whereas this action was not filed until 2014.[27] And finally, the Amended Complaint fails to allege that any of the individual defendants were personally involved with the searches and seizures at issue. Am. Comp. ¶ 60. Accordingly, the Amended Complaint fails to state a *Bivens* claim for a violation of the Fourth Amendment.

The last of plaintiff's *Bivens* claims, asserting Fifth Amendment violations, appears to allege a deprivation of property and of liberty without due process of law. Any claim for a deprivation of a property interest in plaintiff's position as Special Counsel fails for the reasons stated with respect to Count I, *supra*, namely that (i) the deprivation is not traceable to the named defendants, (ii) the deprivation cannot be redressed judicially, and (iii) the deprivation was accompanied by constitutionally adequate process. Moreover, plaintiff's alleged deprivation in such a situation would be his removal from office, which is a personnel action related to plaintiff's federal employment. Thus, the "special factor" of federal employment makes a *Bivens* remedy inappropriate here. *See Zimbleman*, 228 F.3d at 370-71. And still further, as to both the deprivation of plaintiff's position as Special Counsel and any claim for the destruction of plaintiff's property incident to the search of plaintiff's home, a *Bivens* action is untimely as these deprivations occurred well beyond the statute of limitations period. *See supra* n.27.

---

[27] *See Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 67 (4th Cir. 2015) (statute of limitations for a § 1983 action is the personal injury statute of limitations for the forum in which the claim arises); *Reinbold v. Evers*, 187 F.3d 348, 359 n.10 (4th Cir. 1999) (noting that the statute of limitations for *Bivens* actions is that same as for § 1983 actions); Va. Code § 8.01-243(A) (two year statute of limitations applicable to search of the home); D.C. Code § 12-301(8) (three year statute of limitations applicable to search of the office).

Finally, plaintiff appears to allege a deprivation of liberty as a result of the reputational damage he sustained throughout the course of the OPM's investigation into plaintiff's misconduct in office. It is well settled that a reputational injury caused by the government's defamatory statements and accompanied by a state action that alters one's legal status constitutes a deprivation of a constitutionally protected liberty interest. *See Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012). Yet, in the instant case the harm that plaintiff alleges to his reputation occurred in the context of a federal personnel action, namely the investigation into plaintiff's performance as Special Counsel. Accordingly, plaintiff's federal employment once against constitutes a "special factor" that makes implying a *Bivens* remedy inappropriate. *See Zimbleman*, 228 F.3d at 370-71.

For the foregoing reasons, the Amended Complaint fails to state a *Bivens* claim for a violation of the First, Fourth, or Fifth Amendments, and Count VII must be dismissed with prejudice.

## IX.

Counts VIII through XIV of the Amended Complaint allege various state common law tort causes of action. With one limited exception—part of Count XI[28]—these counts have been converted into actions against the United States pursuant to the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 2679(d)(2) (providing that upon appropriate certification that a federal employee was acting within the scope of his or her employment at the time a tort claim

---

[28] Plaintiff alleges in Count XI that certain of defendant Byrne's post-federal employment conduct was tortious. Because this conduct was not within the scope of Byrne's federal employment, Byrne remains a defendant to Count XI but only with respect to his post-federal employment conduct.

arose, the United States is substituted as the party defendant).[29] Accordingly, with the exception

of Count XI as noted *supra*, all named defendants in Counts VIII through XIV are properly

dismissed with prejudice, and these counts are deemed actions against the United States. *See*

*Jamison v. Wiley*, 14 F.3d 222, 227 (4th Cir. 1994) ("[A]n FTCA action against the United States

is the sole remedy for any injury to person or property caused by the negligent or wrongful acts

of a federal employee 'acting within the scope of his office or employment.'"); *Mignogna v. Sair*

*Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991) (stating that an FTCA action "must be brought

against the United States rather than an agency thereof").

Importantly, the FTCA is a limited waiver of sovereign immunity, and no immunity is

waived "unless the claimant shall have first presented the claim to the appropriate Federal

agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. §

2675(a). Plaintiff concedes that he did not pursue administrative remedies until November 24,

2015, well after he initiated this lawsuit in August 2014. Because "the requirement of filing an

administrative claim is jurisdictional and may not be waived," plaintiff's failure to exhaust his

administrative remedies requires dismissal without prejudice for lack of subject matter

jurisdiction. *See Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) (internal

quotations omitted).

Although the conclusion that there is no subject matter jurisdiction owing to plaintiff's

failure to exhaust his administrative remedies ends the analysis, it bears mentioning that in all

likelihood plaintiff's tort claims against the United States are barred under 28 U.S.C. § 2680(h),

which preserves the immunity of the United States as to "[a]ny claim arising out of assault,

---

[29] *See Bloch v. Exec. Office of the President*, No. 15-cv-1146 (E.D. Va. Sept. 8, 2015) (Notice of Substitution of the United States of America as Proper Party Defendant) (Doc. 2).

battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Thus, plaintiff's claims for interference with contract (Count VIII) and intentional and negligent misrepresentation (Count XII) are expressly barred under § 2680(h). Moreover, because § 2680(h) covers all tort actions that "aris[e] out of" any of the enumerated torts and because most of the tort actions that plaintiff asserts appear to arise out of slander or libel, there is a good chance that plaintiff does not have any viable tort claims under the FTCA.[30] Although the application of § 2680(h) is neither reached nor decided here in light of the lack of subject matter jurisdiction over the FTCA claims, if and when plaintiff exhausts his administrative remedies the decision to reinitiate litigation of the FTCA claims presented here should be informed by the strict requirements of Rule 11, Fed. R. Civ. P.

    With respect to defendant Byrne, who remains a defendant in his individual capacity as to Count XI, plaintiff's claim clearly fails. In Count XI, the Amended Complaint alleges that Byrne breached his fiduciary duty to plaintiff after Byrne left his employment at the OSC by conspiring to have plaintiff removed as Special Counsel so that Byrne could be appointed to that position instead. In this respect, the Amended Complaint fails to state a claim because there is no basis to conclude that *anyone* owed *plaintiff* a duty; fiduciary duties run to the employer, not the supervisor or person in charge. *See* Restatement (Third) of Agency § 1.01 (2006) (agency relationship and accompanying fiduciary duties exist between the agent and the person or entity on whose behalf the agent acts). Byrne's employer was the OSC, not plaintiff, and Byrne's

---

[30] *See, e.g., Popovic v. United States*, 175 F.3d 1015, 1999 WL 228243, at *5 (4th Cir. 1999) (concluding that negligent investigation and invasion of privacy were barred as arising out of defamatory acts); *Harms v. United States*, 972 F.2d 339, 1992 WL 203942, at *5 (4th Cir. 1992) (concluding that a claim for intentional infliction of emotional distress was barred because it arose from libel or slander).

fiduciary duties, if any, flowed to the OSC, not plaintiff. Moreover, it is axiomatic that "an employee's fiduciary duty ends upon termination of the employment relationship." *Phillips v. Mobus*, 894 F. Supp. 2d 71, 93 (D.D.C. 2012). As such, even if Byrne owed a duty to plaintiff at some point in the past, Byrne did *not* owe plaintiff any fiduciary duties following the termination of Byrne's federal employment. Accordingly, Byrne must be dismissed with prejudice from Count XI.

Thus, all named defendants must be dismissed with prejudice as to Counts VIII, IX, X, XI, XII, XIII, and XIV. In their stead, the United States must be substituted as the proper defendant with respect to the claims arising from conduct undertaken in the scope of the named defendants' federal employment, and the counts against the United States must be dismissed without prejudice for lack of subject matter jurisdiction due to plaintiff's failure to exhaust administrative remedies.

## X.

Finally, Count XV of the Amended Complaint seeks injunctive relief against all defendants. Of course, "injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Dwoskin v. Bank of Am.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012). Accordingly, Count XV must be dismissed for failure to state a claim. Because a remedy should not be pled as a cause of action, plaintiff need not be given leave to amend his complaint as no new allegations can save Count XV.

## XI.

After defendants filed their motion to dismiss, plaintiff filed a motion for leave to amend his complaint for the purpose of adding three new counts. Specifically, plaintiff seeks to add (i) Count XVI, alleging facts relating to plaintiff's exhaustion of administrative remedies with

31

respect to his FTCA claims and alleging the futility of the administrative exhaustion requirement, (ii) Count XVII, alleging that the actions of the EOP and the OPM violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, and (iii) Count XVIII, alleging common law invasion of privacy. Because each of these proposed amendments would be futile, plaintiff's motion must be denied.

First, plaintiff's proposed amendment to allege facts relating to the administrative exhaustion of plaintiff's FTCA claims would simply incorporate into the complaint that plaintiff sought to exhaust administrative remedies well after he filed this lawsuit. Pursuant to 28 U.S.C. § 2675(a), "[a]n action shall not be instituted" under the FTCA until administrative remedies are exhausted. Plaintiff's proposed amendment cannot remedy the jurisdictional fact that he failed to comply with the statute. Moreover, plaintiff's argument that the administrative exhaustion requirement should be excused as futile is of no moment; the Fourth Circuit has previously dismissed such arguments as "meritless" and "flatly inconsistent with Congressional intent behind the exhaustion requirement." *Howard v. Milam*, 905 F.2d 1529, 1990 WL 74309, at *4 (4th Cir. 1990); *accord Kokotis*, 223 F.3d 275, 278 (4th Cir. 2000) ("[T]he requirement of filing an administrative claim is jurisdictional and may not be waived.") (internal quotations omitted). Accordingly, plaintiff's amendment is futile and must be denied.

Second, plaintiff's proposed APA amendment must be denied for at least three reasons. For one, plaintiff's proposed APA claim fails to state a claim in that it does not identify the "agency action" for which review is sought. *See* 5 U.S.C. § 706. In any event, given the whole of the Amended Complaint, the challenged agency action is likely either the investigation into plaintiff's conduct as Special Counsel or his removal from office. If so, such a claim is preempted by the CSRA. *See Mann v. Haigh*, 120 F.3d 34, 38 (4th Cir. 1997) ("[I]n view of the

comprehensiveness of the CSRA as interpreted by the Supreme Court in *Fausto*, the CSRA prevents...judicial review of an adverse employment decision under the APA."). And finally, even if plaintiff challenges an agency action that is not reserved to the CSRA's remedial scheme, plaintiff has known about the actions about which he now complains since, at the latest, 2013. And plaintiff has now filed five separate complaints over the course of five years in various courts stemming from the same challenged actions by defendants. Plaintiff's eleventh hour attempt to drag this litigation out any longer cannot be countenanced, and denying plaintiff's motion to amend is justifiable not only based on futility but because of plaintiff's "repeated failure to cure deficiencies" and "undue delay" over the many iterations of this lawsuit. *See Glaser*, 464 F.3d at 480 (noting the permissible grounds on which to deny leave to amend).

And third, plaintiff's proposed common law invasion of privacy claim focuses on (i) the disclosure of information concerning plaintiff's criminal tampering with his OSC computer and (ii) the publication of plaintiff's taking administrative leave. Both of these allegations stem from actions undertaken in the scope of defendants' federal employment and would therefore be subject to the FTCA's administrative exhaustion requirement. Because plaintiff has not exhausted his administrative remedies, there can be no subject matter jurisdiction over plaintiff's proposed Count XVIII. Moreover, plaintiff alleges that the disclosed information was false and released maliciously. Thus, plaintiff's invasion of privacy claim arises out of slander or libel and is barred under 28 U.S.C. § 2680(h). *See Popovic*, 1999 WL 228243, at *3 (holding that invasion of privacy is barred under the FTCA where the facts underlying the claim arise out of defamatory acts). Accordingly, permitting leave to amend as to the proposed Count XVIII would be futile.

## XII.

For the foregoing reasons, defendants' motion to dismiss must be granted, and plaintiff's

motion for leave to amend must be denied. An appropriate order will issue.

Alexandria, Virginia
February 9, 2016

/s/

—————————————————
T. S. Ellis, III
United States District Judge
